THE STATE, EX REL. THE BOARD OF HEALTH OF THE STATE OF NEW JERSEY,

*v.*

BOROUGH OF VINELAND.

[Decided November 13th, 1906.]

1. The principle upon which subsequent legislation will operate to repeal prior legislation, without an express repealing clause, is, that where there are two acts on the same subject effect will be given to both, if possible. If the two acts are repugnant in any of their provisions, the later act operates to repeal the earlier to the extent of the repugnancy. Where two acts are not in express terms repugnant, if the later act covers the whole subject of the earlier act, and embraces new provisions, plainly showing that it was intended as a substitute for the earlier act, it will operate to repeal that act.

2. The provisions of chapter 41 of the laws of 1899 (*P. L. 1899 p. 73*), authorizing the state board of health to enjoin the pollution of potable waters, held to be repugnant to and repealed by chapter 72 of the laws of 1900 (*P. L. 1900 p. 113*) in cases where the alleged pollution occurs by reason of the operation of a municipal sewer plant constructed and operated under and pursuant to the directions of the state sewerage commission appointed under the latter act.

3. Semble, chapter 41 of the laws of 1899 (*P. L. 1899 p. 73*) is wholly repealed by chapter 72 of the laws of 1900 (*P. L. 1900 p. 113*).

On final hearing on bill, answer, replication and proofs.

*Mr. Robert H. McCarter,* attorney-general, for the complainant.

*Mr. Herbert C. Bartlett,* for the defendant.

LEAMING, V. C.

The bill in this cause is filed by the attorney-general at the relation of the state board of health, under the provisions of chapter 41 of the laws of 1899 (*P. L. 1899 p. 73*), to restrain the borough of Vineland from discharging the effluent of the filtration beds of its municipal sewer system into the waters of Tarkiln branch, a tributary of Maurice river.

It is contended upon the part of defendant that the provisions of the act referred to are repealed by subsequent legislation. As the jurisdiction of this court in this case is dependent upon the provisions of that act, which by its terms confers upon this court a special statutory jurisdiction in this class of cases (*State, ex rel. Board of Health of New Jersey,* v. *Diamond Paper Mills, 63 N. J. Eq. (18 Dick.) 111; S. C. on appeal, 64 N. J. Eq. (19 Dick.) 793*), it is manifest that if subsequent legislation has operated to effect a repeal of the act in question the bill in this cause must be dismissed.

The principle upon which subsequent legislation will operate to repeal prior legislation without an express repealing clause has been frequently considered by the courts of this state and is well defined. Where there are two acts on the same subject, the rule is to give effect to both, if possible. If the two acts are

repugnant in any of their provisions, the later act operates to repeal the earlier to the extent of the repugnancy. Where two acts are not in express terms repugnant, if the later act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the earlier act, it will operate as a repeal of that act. *McNeely* v. *Woodruff, 13 N. J. Law (1 Gr.) 352, 356; Naylor* v. *Field, 29 N. J. Law (5 Dutch.) 287; McGavisk* v. *State, Morris and Essex Railroad Co., 34 N. J. Law (5 Vr.) 509, 511; Industrial School District* v. *Whitehead, 13 N. J. Eq. (2 Beas.) 290; Ruckham* v. *Ransom, 35 N. J. Law (6 Vr.) 565; Morris and Essex Railroad Co.* v. *Commissioner of Railroad Taxation, 37 N. J. Law (8 Vr.) 228, 230; S. C., 38 N. J. Law (9 Vr.) 472; State* v. *Chambersburg, 37 N. J. Law (8 Vr.) 258, 260; Landis* v. *Landis, 39 N. J. Law (10 Vr.) 274, 277; State, North Ward National Bank,* v. *Newark, 39 N. J. Law (10 Vr.) 380, 391; Roche* v. *Jersey City, 40 N. J. Law (11 Vr.) 257, 259; Mulligan* v. *Cavanagh, 46 N. J. Law (17 Vr.) 45, 49; Bowyer* v. *Camden, 50 N. J. Law (21 Vr.) 87; Haynes* v. *Cape May, 52 N. J. Law (23 Vr.) 181; DeGinther* v. *New Jersey Home, 58 N. J. Law (29 Vr.) 354, 357; Anderson* v. *Camden, 58 N. J. Law (29 Vr.) 515, 521; Camden* v. *Varney, 63 N. J. Law (34 Vr.) 325, 329; Bracken* v. *Smith, 39 N. J. Eq. (12 Stew.) 169, 171; Mersereau* v. *Mersereau, 51 N. J. Eq. (6 Dick.) 382, 385; Hotel Registry Corporation* v. *Stafford, 70 N. J. Law (41 Vr.) 528, 537.*

The act under which this proceeding is brought is entitled "An act to secure the purity of public supplies of potable waters in this state," and was approved March 17th, 1899. The first section of this act forbids any sewage or other polluting matter, which will corrupt or impair or tend to corrupt or impair the quality of the water into which it is discharged, or which will render or tend to render such waters injurious to health, to be placed or discharged into any stream or tributary or branch thereof, from which is taken, or may be taken, any public supply of water for domestic use in any municipality, above the point from which any such municipality shall or may obtain its supply of water for domestic use. A proviso exempts from the opera-

tion of the act any municipality which, at the date of the passage of the act, has a public sewer system, legally constructed under public authority, discharging its sewage into any such stream. A penalty of $100 is provided for each violation of the provisions of the act, and each week's continuance, after notice by the state or local board of health to abate or remove, is made a separate offence. The second section of the act provides a summary proceeding for the recovery of the penalties in an action by either the state board of health or the local board. The third section gives to the state board of health the general supervision, with reference to their purity, of all rivers, brooks, streams, &c., the waters of which are or may be used as the source of public supplies for domestic use. The fourth section provides that, instead of proceeding to recover the penalty named in the first section, the state board of health may, through the attorney-general, at its relation, file a bill in chancery to enjoin the violation of the provisions of the first section of the act.

At the same session of the legislature an act was passed entitled "An act to prevent the pollution of the waters of this state by the establishment of a state sewerage commission, and authorizing the creation of sewerage districts and district sewerage boards, and prescribing, defining and regulating the powers and duties of such commission and such boards." *P. L. 1899 p. 536.* This act was approved March 24th, 1899. This latter act was amended in 1900 (*P. L. 1900 p. 113*) by a re-enactment of the entire act with some minor changes and several important additions. The amendatory act defines the full scope of purpose of the legislature, and any legislative intention to supersede and annul the operation of the act of March 17th, 1899, will be found in this amendatory act. This act retains the state sewerage commission created by and appointed under the act of March 24th, 1899, and increases the salary of its members and removes the limitation upon the annual appropriation to cover the expenditures of the commission. It makes it the duty of the state sewerage commission to investigate the various methods of sewage disposal to enable it to make proper recommendations and to investigate all complaints of pollution of waters which shall be brought to its notice, and if the commission find that

any of the waters of the state are being polluted to the injury of any inhabitants of this state, either in their health, comfort or property, it is made its duty to give notice to the person or municipality so polluting the waters to cease within a time to be fixed by the commission not exceeding five years, and to make, within the time fixed, such disposition of the sewage or other polluting matter as shall be approved by the commission, and any failure to obey such finding of the commission is made unlawful. Any person or municipality aggrieved by the finding of the commission is given an appeal to the court of chancery, which court is empowered by the act to affirm the finding of the commission or to reverse or modify such finding in whole or in part. The act makes it unlawful for any person or municipality to build any sewer or drain from which it is designed that any sewage or other harmful matter, solid or liquid, shall flow into any of the waters of this state so as to pollute or render impure said waters, except under such conditions as shall be approved by the commission, and makes it unlawful for any person or municipality to build or operate any plant for the treatment of sewage or other polluting substance, from which the effluent is to flow into any of the waters of this state, except under such conditions as shall be approved by the commission to whom any new plans must be submitted before building. The act further provides that the commission may apply to the court of chancery for an injunction to prevent the violation of the provisions of the act, and it is made the duty of the court of chancery to restrain violations in such cases. The act also makes elaborate provisions for the formation of sewerage districts embracing two or more municipalities for the establishment of sewerage systems, which may include the scientific treatment of sewage and sewage matters and the effluent thereof, the initiatory proceeding being a petition to the commission, followed by a public hearing and a final order of the commission creating the district and defining its boundaries. Such sewerage districts, after the election and organization of their officers, are made bodies corporate, with power to sue and be sued, purchase and condemn property and issue bonds and to construct and operate sewerage systems within the created districts, but at all times

under the supervision and control of the state sewerage commission. The waters of this state, as defined by the act, do not include the ocean or any waters separating this state from any other, unless such waters are used for potable purposes.

This summary of the provisions of the two acts is deemed to be complete enough to disclose their relative scope and purpose. It will be seen that the purpose of the latter act, as is stated in its title, is to prevent the pollution of the waters of this state by the establishment of a state sewerage commission, and authorizing the creation of sewerage districts and district sewerage boards. With the primary aim to prevent the pollution of the waters of this state the act appears to have adopted, or undertaken the adoption of, a complete and self-sufficient scheme to the accomplishment of that end. In the purposed accomplishment of that end the provisions of the act seem to cover the entire scope and operation of the earlier act. A state sewerage commission is created with broad and comprehensive powers and duties which appear to be not only appropriate but ample to meet and eradicate all conditions which may occasion water pollution within the state. The earlier act is not operative against municipalities with sewer systems which existed at the date of the passage of the act; the later act includes not only a means for their correction, but also a complete means for the prevention of future contamination, existing evils being corrected through the means provided in section 5 of the act, and new pollutions being prevented by the provisions of sections 6, 7 and 8. The waters brought under the protection of the later act include all the waters within the contemplation of the earlier act and other waters as well, the earlier act being limited to potable waters. A special statutory jurisdiction is given to this court by the later act to prevent by injunction all violations of the act; this provision is essentially the same as a corresponding provision in the earlier act. The only feature I find in the earlier act which may be said to be in any sense broader than the later act is that the former act forbids pollution (except as to municipalities with sewer systems already constructed) in any event and irrespective of whether or not injury is sustained, whereas the later act guards against pollutions by giving to

the state sewerage commission supervision and control of the methods of construction and operation of all works and permitting no works to be constructed or operated except under such conditions as shall be approved by the commission, thereby leaving the possibility that the commission may, through error of judgment, permit the operation of imperfect works. This difference in the two acts would seem to be the basis of the present litigation, for by the proofs it appears that the works of defendant municipality were constructed and are being operated pursuant to the consent and approval of the state sewerage commission, and complainant's contention is that notwithstanding that fact potable waters are being polluted through the operation of these works. It appears manifest, however, that in the enactment of the amended sewerage act now under consideration the legislature intended to bestow upon the state sewerage commission the power and duty to fully supervise and control the entire subject of pollution of public waters occasioned by the discharge of sewage, drainage or other polluting matter into such waters and the power and duty to prevent such pollution, and this manifest legislative purpose clearly negatives any possible legislative intent to preserve to the state board of health the right to enjoin the operation of works which have been constructed and are being operated pursuant to the consent and directions of the state sewerage commission. Any conception that the legislature intended to preserve to the state board of health the powers contended for includes the assumption that the state sewerage commission would fail in the performance of the duties imposed upon it, and is not to be entertained. It necessarily follows that the provisions of the earlier act, in so far as they may seem to authorize the state board of health to maintain an action of the nature of the present one against a municipality operating a sewage disposal plant which has been constructed and is being operated pursuant to the consent and directions of the state sewerage commission, are repugnant to the provisions of the earlier act, and, in consequence, repealed to that extent at least. More than this it is unnecessary for me to decide in this case, but I entertain the view that the legislative intent was to adopt

an entirely new system for the protection of the public waters of the state and to substitute the provisions of the new act for those of the old originally designed for the same purpose, and that the later act operates to repeal the earlier act in its entirety.

The conclusion I have reached renders a discussion of the testimony unnecessary. I may say, however, that the testimony (which was taken before my predecessor in office and transcribed for my use) does not lead me to the conclusion that the fact is satisfactorily established in this cause that the effluent of defendant's works corrupts or impairs or tends to corrupt or impair the waters into which it is discharged. The testimony touching this disputed fact is almost wholly that of chemists and bacteriologists. It appears to be accepted as a scientific fact that pathogenic organisms, like typhoid germs, cannot be estimated, but that the recognized method of ascertaining whether or not any pathogenic organisms exist in water is to ascertain by certain recognized bacteriological tests the presence or absence of bacillus coli communis. If coli are found to exist in considerable numbers the conditions are believed to be conducive to the propagation of pathogenic organisms. The coli are, in themselves, harmless, and the number that may safely exist in water is not entirely certain; one thousand coli to the cubic centimeter is believed to disclose a dangerous condition of the water. The testimony in behalf of complainant is that of Dr. Raymond B. Fitz-Randolph, a chemist and bacteriologist, who made chemical analyses of water taken from the effluent February 20th, 1905, April 24th, 1905, and November, 1905, and a chemical analysis and bacteriological examination of water taken from the effluent January 21st, 1906. This witness pronounces the effluent impure and claims to have discovered the presence of coli in a dangerous degree in the bacteriological examination made of the water taken January 21st, 1906. Four scientific experts who have made numerous examinations of the effluent—some chemical and some bacteriological—testified in behalf of the defence in opposition to the testimony of Dr. Fitz-Randolph. Some of these witnesses have given a great amount of time to the examination of the effluent at various periods and to personal examinations of the operation of the works. These

witnesses entertain the view that the waters flowing from the filtration beds are pure and do not contaminate or tend to contaminate the waters of Tarkiln branch into which they flow. In view of the testimony in behalf of defendant, I do not think that a conclusion could be justified to the effect that defendant is violating either the letter or spirit of the statute under which this cause is brought. It is admitted that the effluent has a disagreeable odor. This odor is explained to exist by reason of suspended but harmless gases which disappear when the effluent is discharged. The testimony also discloses that the filtration works of defendant municipality are constructed and operated under the most approved modern system, and a perusal of the testimony goes far to satisfy me that if the works in question fall short of accomplishing a degree of purification which will permit their operation under the terms of the earlier act there is little hope of any sewer filtration works being successfully operated if that act should be held to be still operative. I make this appended suggestion by reason of the fact that section 12 of the Sewerage Commission act of 1900 contemplates the operation of sewage disposal works for the scientific treatment of sewage matter and the effluent thereof. I will advise a decree dismissing the bill, with costs.