12 N.J. Super. 253 (1951)
79 A.2d 335
LESTER E. MAHR, AS ADMINISTRATOR OF THE ESTATE OF ANNA MARIE MAYER, DECEASED, PLAINTIFF,
v.
STATE OF NEW JERSEY AND TOWNSHIP OF CEDAR GROVE, IN THE COUNTY OF ESSEX, A MUNICIPALITY OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 30, 1951.
*256 Mr. Lester E. Mahr, pro se.
Mr. Fred G. Stickel, III, for defendant Township of Cedar Grove.
Mr. Theodore D. Parsons, Attorney-General (Mr. Osie M. Silber, Deputy Attorney-General), for defendant State of New Jersey.
FRANCIS, J.C.C. (temporarily J.S.C.).
This matter is before the court on an interpleader complaint. There is no dispute as to the facts and the parties have submitted the problems involved to the court for determination.
The plaintiff, as administrator of the estate of Anna Marie Mayer, deceased, filed his account in the Essex County Court. An order of approval thereof was entered which, among other things, directed that the balance remaining in the hands of said accountant, which now amounts to $3,379.75, be disposed of according to law.
*257 The parties concede that since his appointment and down to the present time, the administrator has made diligent and adequate search for heirs or next of kin of the decedent, and that none has been found; further, that the Township of Cedar Grove, where the decedent lived and worked for many years in the Essex County Overbrook Hospital, knows of no heirs or next of kin; and that the decedent's marriage was annulled in this State.
In view of the fact that there are no known heirs or kindred capable of inheriting the residue of the estate, the administrator was subjected to two demands therefor, one by the State of New Jersey under the Escheat Act (R.S. 2:53-16) and the other by the Township of Cedar Grove under R.S. 3:5-9, the act governing the distribution of personal property.
In the face of these conflicting claims, the administrator filed his interpleader complaint asking the court to determine the merits of the respective claims and designate which of the two claimants is entitled to receive the fund.
Cedar Grove argues that interpleader will not lie here because the State has not prosecuted the proceedings in the Chancery Division of the Superior Court as prescribed by sections 21, 22, 23, and 24 of the Escheat Act, and obtained a judgment "declaring that the property described * * * has escheated to the State." (Sec. 22.) The contention is that, since section 23 provides that upon the filing of such judgment the "person having such property in their possession shall forthwith deliver the same to the Treasurer of the State of New Jersey," the right of the State, if any, is inchoate and not such as would permit either recognition thereof in this proceeding or a judgment that the State is entitled to the fund.
In the sections already adverted to, the Escheat Act ordains the procedure to be followed by the State in order to establish its claim. It appears that a petition (complaint) shall be filed in the Chancery Division of the Superior Court setting out that certain personal property has escheated to the State and that the defendant named has custody or possession of such personal property. The complaint in this type case should set forth that the "owner of such personal property has died intestate *258 without heirs or known kindred capable of inheriting the same and without leaving a surviving spouse." (Sec. 21.) And the complaint shall ask the court to enter a judgment escheating the property to the State.
After the filing of the petition (complaint), the person having possession of the property may be required by court order to furnish to the Attorney General or to his deputy appointed to prosecute the action, all information he has with relation to the last known address of any person having any interest in the personal property.
Upon the filing of the complaint, the court is required to make an order requiring the defendant to answer within a fixed time. This order must contain "such other directions as the court may deem appropriate for the speedy determination of the cause, the protection of the property, or for the disclosure of information pertinent to the prosecution of the cause." When an answer is filed, the court is directed to fix a time and place for hearing.
Thereafter, a notice "containing a summary of the order designating the time and place of hearing, as approved by the court, shall be published in a manner directed by the court and shall also be published once a week for three successive weeks in a newspaper of general circulation designated by the court; * * *. Such notice shall direct that any person who may claim to be entitled to the personal property mentioned in the petition (complaint), or to any part thereof or interest therein, shall file with the court his claim in writing at least five days prior to the date fixed in the hearing."
It is further provided that:
"Any person claiming to be entitled to the personal property described in the petition (complaint), or to any part thereof, or to any interest therein, shall file his claim in the general form of an answer to the petition (complaint), which answer shall set forth in such detail as the court may require why the answering party contends that the property mentioned in the petition (complaint) should not escheat to the State and, if the answering party shall claim any right to or interest in said property, the nature thereof; and the court shall at the time of hearing take such evidence as may be proper, and proceed to determine the cause and enter such final decree (judgment) *259 as shall be equitable and just and in conformity with the provisions of this act. Such decree (judgment) may determine the title to such personal property, and where the court shall find that such personal property, in whole or in part, has escheated to the State the decree (judgment) shall so declare, and such personal property, or so much of it as the court shall decree (adjudge), shall thereupon escheat to the State." (Sec. 22.)
The State has not pursued the steps required by this statute to perfect the claim. It has obtained no judgment "declaring that the property has escheated to the State." Consequently, it is impossible in this action to enter a judgment directing the administrator to pay the fund to the State Treasurer.
The State contends that we are concerned here only with the question of the existence of the right of escheat and not with the method of enforcing the right. This is too narrow a view of the issue. For example, it is conceivable that in escheat proceedings properly instituted next of kin may appear following the required publication. In this event, the State would not obtain judgment. Non-kindred claimants may file answers and their interests may be paramount to those of the State. In these instances, manifestly a judgment at this time in the interpleader action would not be res adjudicata of the right to the fund.
Actually, what the court is being asked to decide is that, assuming no claimants appear in the escheat proceedings whose rights are paramount, the State will be entitled to the fund. Our jurisdiction in interpleader actions cannot be invoked on any such hypothetical basis. Therefore, no judgment can or will be entered directing payment to the State. The matter of its claim should be prosecuted in the manner prescribed by the statute. (19 Am. Jur., § 37, p. 403.)
There remains for disposition the claim of the defendant Cedar Grove. A much more expeditious and effective method of presenting this entire matter would have been for the State to have filed a complaint seeking judgment under the Escheat Act. In such a proceeding, Cedar Grove could have filed an answer claiming the fund and then it would have been possible *260 for the court to enter a judgment finally disposing of the entire matter.
However, since all of the parties seem desirous of having the basic problem resulting from the claim by Cedar Grove determined, this will be done.
As already indicated, Cedar Grove contends that it has a prior right to the fund because of R.S. 3:5-9, which provides as follows:
"If the intestate leaves no husband or widow and no known kindred or relatives, the administrator of the estate shall, at the expiration of one year after the intestate's death, put the surplus thereof, after payment of debts and necessary expenses, out at interest and pay the net interest or income thereof annually in the manner following: (a) If the intestate had a legal residence in any municipality such interest shall be paid to the treasurer thereof to and for the use of its poor; (b) If the intestate was a nonresident such interest shall be paid to the treasurer of the municipality in which the intestate died to and for the use of the poor thereof."
This act provides also that if no person legally entitled to such surplus shall make application therefor within seven years after the intestate's death, such person shall be barred thereafter and the administrator shall then pay the surplus to the treasurer of the municipality which is receiving the income. (Sec. 10.)
The State contends that this enactment was impliedly repealed by R.S. 2:53-15 et seq., under which it asserts a right to the fund. R.S. 2:53-16 provides:
"If any person, who, at the time of his death, has been or shall have been, the owner of any personal property within this State, and shall have died, or shall die intestate, without heirs or known kindred, capable of inheriting the same, and without leaving a surviving spouse, such personal property, of whatsoever nature the same may be, shall escheat to the State."
The legislation Cedar Grove stands on was enacted in 1898 (L. 1898, c. 234) and made part of the act relating to the distribution of personal property (R.S. 3:5-1 et seq.). Apparently it had been section 9 of the 1877 revision of the Distribution Act but had been repealed. (See notes following R.S. 3:5-9, N.J.S.A., p. 231.)
*261 New Jersey had no general Escheat Act until 1946 (L. 1946, c. 155, p. 713, as amended L. 1947, c. 357, p. 1157). When adopted, it contained no express repealer of R.S. 3:5-9, 10 and 11. However, the State says that since the Legislature in 1946 was dealing with the precise subject covered by R.S. 3:5-9 et seq., an implied repeal follows. Cedar Grove, on the other hand, argues that the statutes are not repugnant; they are in pari materia and effect should be given to both. Specifically its position is that since the Escheat Act speaks generally of a person who dies intestate with no heirs or known kindred capable of inheriting, while the Distribution Act deals particularly with cases of intestacy where the personal property is found in the hands of an administrator, the particular legislation, i.e., the Distribution Act, should be regarded as an exception to the general legislation, i.e., the Escheat Act. So the suggestion is that the Escheat Act "applies to all personal property of decedents who die intestate except where the property is found to be in the hands of a duly appointed administrator, in which case the Distribution Act controls and the municipality takes."
Repeal of existing legislation by implication is not favored. (50 Am. Jur., § 538  Statutes.) The question is one of legislative intention and the law has established a presumption against such repeal. French v. Board of Com'rs. of Ocean City, 136 N.J.L. 57 (Sup. Ct. 1947). However, where the intention to effectuate a repeal is clear and compelling; where there is a clear repugnancy between the two acts, or a manifest intention to cover the same subject matter by way of revision (Fisher v. Brehm, 100 N.J.L. 341 (E. & A. 1924)); or where, considering the specific provision in relation to the general object of a statute, the purpose to repeal prior legislation is revealed, it is the judicial function to effectuate it. Keiderling v. Mayor of Plainfield, 118 N.J.L. 498 (Sup. Ct. 1937). And an intention to repeal statutory provisions may be inferred from radical changes in the existing law. This is because "Laws are presumed to be passed with deliberation and with full knowledge by the Legislature of the existing law upon the subject." In re Gopsill, 77 N.J. Eq. 215 *262 (Prerog. 1910); Eckert v. N.J. State Highway Dept., 1 N.J. 474 (1949).
In State ex rel. The Board of Health v. Borough of Vineland, 72 N.J. Eq. 289 (Ch. 1906); affirmed, 72 N.J. Eq. 862 (E. & A. 1907), Vice-Chancellor Leaming reviewed a number of prominent cases and set forth the doctrine as follows:
"The principle upon which subsequent legislation will operate to repeal prior legislation without an express repealing clause has been frequently considered by the courts of this State and is well defined. Where there are two acts on the same subject, the rule is to give effect to both, if possible. If the two acts are repugnant in any of their provisions, the later act operates to repeal the earlier to the extent of the repugnancy. Where two acts are not in express terms repugnant, if the later act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the earlier act, it will operate as a repeal of that act."
Applying the tests recited to the dispute here, it is plain that the Legislature, in enacting the Escheat Act, intended to efface the sections of the Distribution Act relied upon by the defendant township.
Concededly the State had no general escheat law relating to tangible and intangible personal property prior to 1946. In that year, the lawmakers undertook to deal with the whole problem of escheat of such property, both as to the conditions which would bring about acquisition thereof by the State and as to the manner and means of accomplishing the acquisition. It must be assumed that the Legislature was aware at the time that revenue provided by interest on funds of an intestate after administration, as well as by the unclaimed funds themselves, after seven years, was going to the various municipalities. And the act adopted leaves no room for doubt that the intention was to pre-empt this revenue for the State.
It must be noted that the definition of personal property set forth in the Escheat Act is broad enough to include every conceivable kind of tangible and intangible personal property. However, specifically excluded are personal property "in the custody of any court in this State" and "any personal property covered by Chapter 199 of the Laws of 1945."
*263 Chapter 199 of the Laws of 1945 relates to the escheat of unclaimed bank deposits. (R.S. 17:9-18 to 26.) "Personal property in the custody of any court in this State" cannot be deemed to include funds in the hands of an administrator under the circumstances of this case. The administrator holds the funds here only for the purpose of distribution according to law, which means to the State or to Cedar Grove, depending upon the determination of the vital question of implied repeal now presented and the obtaining by the State of a judgment in an escheat proceeding.
On fundamental principles of statutory construction, these two express exclusions demonstrate an intention to include escheatable personal property in all other classes of cases. Expressio unius est exclusio alterius.
Furthermore, the Legislature dealt with the personal property of an intestate in a separate and distinct section (sec. 16). In this section, the 14-year period, the elapse of which must precede escheat under section 17, in cases other than intestacy, was eliminated. Such elimination manifests an intention not to require a waiting period of 14 years before personalty of an intestate would escheat. And the declaration of escheat was expressly made applicable to "any personal property within this State" of an intestate owner. Thus there is present inescapable evidence that the Legislature intended to deal generally and fully with escheat in cases of intestacy and to exclude any existing form of disposition of such property.
The exception suggested by the township is not a reasonable one. As a practical matter, administration of an intestate's estate would be expected in the great majority of cases where property of any value is found at the time of death. To hold that escheat arises only where no administrator is appointed, would mean recovery by the State in rare instances. Such a rule would permit the obvious intent of the Legislature to be subverted and it might well produce unseemly competition between the municipality and the State, the one racing to secure the appointment of an administrator and the other to institute escheat proceedings.
*264 The only reasonable and feasible conclusion from all these considerations is that R.S. 2:53-15 through 32, representing the later expression of the legislative will and being plainly repugnant to R.S. 3:5-9, 10 and 11, operate as an implied repealer thereof.
Consequently, the Township of Cedar Grove has no claim to the funds in the hands of the administrator.
The further contention has been made by the township that the Escheat Act is unconstitutional for lack of due process and because its title is defective.
The due process contention has been disposed of by the Supreme Court in State v. Standard Oil Co., 5 N.J. 281 (1950).
With respect to the title of the act, the claim is that it violates Article IV, Section VII, paragraph 4, of the 1947 Constitution, which requires that "every law shall embrace but one object, and that [object] shall be expressed in the title." The title says: "An Act providing for the escheat of certain unclaimed personal property." It is argued that "unclaimed property" connotes that there is an owner or person entitled to demand possession thereof, while in the case of intestacy with no known kindred, it is contemplated that there is no one in existence to assert a claim. Therefore, this defendant urges that the use of the word "unclaimed" covers only the object of the act which is set forth in section 17, namely, the escheat of personalty which has been unclaimed for 14 years. However, such a construction of the title is too constricted. Personalty in the possession of an administrator is just as unclaimed where kindred of the decedent are unknown, as it is in instances where the owner or person entitled to possession thereof has not been heard from for 14 years and no one knows whether or not he is living.
The title of an act need not include all the distinct provisions nor serve as an index or digest; it is merely a label which will be broadly and liberally construed in order to validate the legislation "if such a course be at all reasonably practical." The courts "do not indulge in hypercriticism" and the title will be sufficient if it expresses its object in a general way *265 so as to be intelligible to the ordinary reader. (Joyce v. Price, 123 N.J.L. 171 (Sup. Ct. 1939)). Applying this rule, the word "unclaimed," associated as it is with "escheat" in the title, sufficiently describes the purpose of the act.
Under all the circumstances, the complaint herein will be dismissed because: (1) the Township of Cedar Grove is not entitled to the fund in the hands of the administrator, or any interest thereon, since R.S. 3:5-9 et seq. were impliedly repealed by the Escheat Act; and (2) the State of New Jersey has not obtained a judgment escheating the fund to it under R.S. 2:53-16 et seq.