709 A.2d 837

JACK BONA, PLAINTIFF, v. STEPHEN A. WYNN, GREENBERG MARGOLIS, CLARK E. ALPERT, STEVEN PASTERNAK, MARTIN GREENBERG, GOLDEN NUGGET, INC., GNAC, CORP., MIRAGE RESORTS, INCORPORATED, FEDERAL DEPOSIT INSURANCE CORP. (FDIC), FDIC AS MANAGER OF THE FSLIC RESOLUTION FUND AS RECEIVER FOR SAN MARINO SAVINGS AND LOAN ASSOCIATION, HOWARD FEINSTEIN,

BRUCE PEDERSON, ROBERT RUSSELL, JACK SMITH, TRA-
CEY E. WHITAKER, MARIO FLORIANI, FRANK MARKWARD,
DONALD FISCOR, COUNTY OF ATLANTIC, JAMES T. PLOUS-
IS, WILLIAM F. FISHER, JR., COUNTY OF CAPE MAY, ISAAC
NUTOVIC, NEWARK MORNING LEDGER CO. AND WILLIAM
T. QUINN, DEFENDANTS.

Superior Court of New Jersey
Law Division
Atlantic County

Decided March 18, 1997.

259

*Jack Bona,* plaintiff *pro se.*

*William P. Busch, Jr.,* for defendant Frank Markward (*Paul J. Gallagher,* County Counsel, attorney).

WINKELSTEIN, J.S.C.

Plaintiff Jack Bona (Bona) was incarcerated on a writ of *capias ad satisfaciendum* (the writ) for failing to disclose his assets after a money judgment was entered against him. He was housed at the Atlantic County jail with the general prison population, assaulted by another inmate and sustained injuries. The claim against defendant Frank Markward (Markward), the warden of the jail, alleges that Markward violated *N.J.S.A.* 30:8-5, which provides that it shall be unlawful "for any ... jailer or keeper of any jail to confine or keep debtors and criminals together in the same room or chamber...." *See N.J.S.A.* 30:8-5. Plaintiff is seeking damages pursuant to *N.J.S.A.* 30:8-6, which states that a failure to abide *N.J.S.A.* 30:8-5 subjects the "keeper of the jail" to payment of double damages to any aggrieved party. *See N.J.S.A.* 30:8-6. The central issue addressed by this opinion is whether *N.J.S.A.* 59:5-2(b)(4) of the Tort Claims Act (the Act), which provides that jail officials are not liable for any injury caused by one prisoner to another, impliedly repealed *N.J.S.A.* 30:8-6.

Bona is a former business executive who had plans to develop a casino in Atlantic City. He controlled a corporation known as Jack Bona, Inc., which entered into a real estate option agreement with GNAC, Corp. (GNAC), a subsidiary of Golden Nugget, in August 1983 to purchase a parcel of real estate upon which it was anticipated that a casino would be constructed. The purchase

price was $18,000,000 less any option payments previously paid. Jack Bona, Inc. assigned its rights as optionee to the Dunes Casino Hotel (Dunes), a partnership controlled by Bona. The parties scheduled closing for July 26, 1985. Bona, who was the managing partner of the Dunes, did not have the funds to close and defaulted. Several days prior to closing, Bona had filed a complaint against GNAC for specific performance and a *lis pendens* was placed against the property which was the subject of the agreement. At the time of closing GNAC was unaware of the suit and *lis pendens*. Subsequent to the default, GNAC filed suit against Bona, Jack Bona, Inc., and Queens Ventures, Inc. the Dunes' property manager (the Bona defendants) to vacate the *lis pendens* and terminate the option agreement. The Bona defendants filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 *U.S.C.A.* § 1101 to 1174. Eventually GNAC obtained relief from the automatic stay and in April 1989 title to the property was cleared.

The GNAC suit consisted of five counts. The first four counts, which included claims for wrongful interference with the GNAC's economic advantage, malicious prosecution in filing the *lis pendens*, malicious abuse of process, and slander of title, were dismissed. The Bona defendants defaulted under the fifth count, which alleged fraud. After a proof hearing, a damage award of $29,264,168 was entered against the Bona defendants. After an appeal, the Appellate Division remanded the matter back to the trial court and a second proof hearing was held. At the second proof hearing the law division found that Bona pursued a deliberate course of deception and misrepresentation under the option agreement and during the course of the subsequent litigation. The court concluded that Bona committed fraud and entered judgment against the Bona defendants for $10,406,821, plus $70,-006.71 in counsel fees. At the conclusion of the proof hearing, GNAC moved for a writ of *capias ad satisfaciendum*. The court issued the writ and Bona was immediately arrested and imprisoned. In an unreported decision, the Appellate Division affirmed the Law Division's determination that Bona committed fraud and

concluded that the writ was lawfully issued. Bona was jailed from September 25, 1989 through August 19, 1991,[1] initially at the correctional facility in Cape May County and subsequently at the Atlantic County jail. In the section of the jail in which Bona was being held there were prisoners who had been convicted of various offenses. During his incarceration at the Atlantic County jail, Bona was assaulted and sustained various injuries, including a broken rib.[2]

After his release from jail, Bona filed suit against various GNAC officials, the lawyer and law firm who moved for the writ, various government officials, the Newark Star–Ledger (Ledger), and the Federal Deposit Insurance Corporation (FDIC). The suit was originally filed in state court but was removed to the U.S. District Court for the District of New Jersey to address certain federal claims. The District Court dismissed the allegations against all of the defendants on substantive grounds, except those against Markward and the Ledger, which were dismissed on jurisdictional grounds, since no federal claims remained. The instant suit was then filed against Markward and the Ledger. The claim against the Ledger has been dismissed. The only remaining claim relates to the applicability of *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6.

Bona alleges that since he was housed in the same area as the general prison population, rather than held separately as a debtor,

---

[1] Bona executed an assignment of his assets and provided the judgment creditor's attorney with a blanket authorization to obtain information as to his assets. He was released from jail after the law division judge, in an unreported opinion, found that Bona was an insolvent debtor and that his incarceration, after nearly two years, had lost its coercive effect. *In the Matter of The Application Of Jack Bona For Discharge From Imprisonment As An Insolvent Debtor*, No. ATL–L–4141–90, at 15 (Law.Div. Aug. 1, 1991).

[2] The facts surrounding the assault are not in dispute. On March 9, 1991, Bona was alone in his cell. Another inmate came into the cell and assaulted Bona, causing him to suffer multiple bruises and a fractured rib. He required hospital treatment. For purposes of this opinion it is assumed that plaintiff's injuries meet the Tort Claim's threshold under *N.J.S.A. 59:9–2(d)*.

he was wrongfully confined in the county jail in violation of *N.J.S.A.* 30:8–5. He is seeking damages against Markward for the attack against him by another inmate based upon *N.J.S.A.* 30:8–6.

The statutes read as follows:

> It shall not be lawful for any sheriff, jailer or keeper of any jail to confine or keep debtors and criminals together in the same room or chamber, but they shall be confined and kept separate and apart from each other in distinct rooms.

> [*N.J.S.A.* 30:8–5.]

> If any sheriff, undersheriff, jailer or other officer, or minister aforesaid, shall offend against the provisions of section 30:8–5 of this Title, every such offender shall, besides being punished on conviction for a misdemeanor,[3] forfeit and pay double damages to the party aggrieved, to be recovered with costs, by a civil action in any court having cognizance thereof.

> [*N.J.S.A.* 30:8–6.]

Markward does not deny that the assault occurred. However, he claims immunity from liability for any injuries Bona suffered from the assault pursuant to *N.J.S.A.* 59:5–2(b)(4), which provides: "[N]either a public entity nor a public employee is liable for: . . . (b) any injury caused by . . . (4) a prisoner to any other prisoner." The issues thus presented are whether at the time of his incarceration, Bona was (1) a "debtor" under *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6; or (2) a "prisoner" under *N.J.S.A.* 59:5–2(b)(4); or both; and, if he was both, (3) does *N.J.S.A.* 59:5–2(b)(4) take precedence over *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6.

First I will address whether he was a debtor for purposes *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6.

*N.J.S.A.* 30:8–5 had its genesis in An Act concerning sheriffs, P.L. No. 1876, Ch. 4838, § 20 (1876), *N.J. Compiled Stat.* (revised 1877) (hereinafter, "the 1877 Act"). The current statute, effective January 15, 1971, is essentially unchanged from the 1877 Act, which read as follows:

---

[3] This opinion does not address the efficacy of that portion of the statute which subjects the sheriff or other officer to prosecution for a violation of *N.J.S.A.* 30:8–5.

20. Debtors and criminals to be kept separate.—That it shall not be lawful for any sheriff, jailer or keeper of any jail to confine or keep debtors and criminals together in the same room or chamber, but they shall be confined and kept separate and apart from each other in distinct rooms.

[The 1877 Act, § 20.]

Subsection 21 of the 1877 Act provided for penalties for violations of Subsection 20:

21. Penalty for violating three preceding sections.—That if any sheriff, undersheriff, coroner, jailer or other officer, or minister of aforesaid, shall offend against the three clauses or sections immediately preceding, or any of them, or any part thereof, every such offender shall, besides being punished on conviction for a misdemeanor, forfeit and pay double damages to the party aggrieved, to be recovered, with costs, by action of debt in any court having cognizance thereof.

[The 1877 Act, § 21.]

Over the last century there are no published opinions which discuss *N.J.S.A.* 30:8–5, *N.J.S.A.* 30:8–6, or their progenitors. To properly construe the statutes, and determine the legislative intent, the statutes must be viewed in their historical context.

Prior to the amendment of the New Jersey Constitution on September 2, 1844, all debtors could be imprisoned. *N.J. Const. of 1776* art. XXII (declaring common law of England effective until altered). The Constitution, as amended in 1844, limited imprisonment for debts to cases of fraud:

Imprisonment for debt or militia fine. No person shall be imprisoned for debt in any action, or on any judgment founded upon contract, unless in cases of fraud; nor shall any person be imprisoned for a militia fine in time of peace.

[*N.J. Const. of 1844* art. I, ¶ 17.]

When the current constitution was adopted at a general election on November 4, 1947, the language concerning imprisonment for debts remained unchanged. *N.J. Const. of 1947* art. I, ¶ 13 (effective Jan. 1, 1948). There remains a difference of opinion, however, as to whether the term "fraud" relates to fraud in the underlying transaction or fraud in the failure to disclose assets subsequent to the judgment being entered. *Cf. Krafte v. Belfus,* 114 *N.J.Eq.* 207, 212, 168 *A.* 755 (Ch.Div.1933); *Sgambati v. Sgambati,* 242 *N.J.Super.* 688, 691–92, 577 *A.*2d 1328 (Ch.Div. 1990) (both supporting proposition that fraud must be in the underlying transaction) *and Ex parte Clark,* 20 *N.J.L.* 648, 649–50

(Sup.Ct.1846) (concluding that fraud could be either in relation to manner of creating debt or to subsequent attempts to defeat creditors' recovery).[4]

In the instant action it is of no consequence whether the prohibition against imprisonment for debt applies solely to fraud in the underlying transaction or fraud in the failure to disclose assets subsequent to the entry of judgment. Here, both are present. The judgment against Bona was entered on the fraud count in the complaint. At the proof hearing, the law division judge found that Bona undertook a deliberate course of deception and misrepresentation and had not satisfactorily explained what happened to his assets.[5] Under either body of law, therefore, Bona was imprisoned as a "debtor" for fraud.

As noted previously, Bona was incarcerated pursuant to a writ of *capias ad satisfaciendum*. In *Perlmutter v. DeRowe*, 58 *N.J.* 5, 13, 274 *A.*2d 283 (1971), the New Jersey Supreme Court considered the nature of the writ. The court stated:

---

[4] In reaching this conclusion, the court stated:

> We cannot do such injustice to the framers of the constitution, as to suppose they meant to say, you may imprison your debtor for the debt he owes you, provided that by indictment, or in some other mode yet to be devised, you will first convict him of *fraud* in the creation of the debt, or in avoiding the payment of it. The more I have reflected upon this clause in the constitution, the more I am convinced, it was most happily constructed to protect the honest, but unfortunate debtor from imprisonment; while it leaves the legislature at liberty, from time to time, as public policy and experience may dictate, to reach the fraudulent and dishonest shifts and devices of the debtor; and subject him to imprisonment, for the debt he is seeking to avoid the payment of.
>
> [*Ex parte Clark, supra,* 20 *N.J.L.* at 650 (emphasis in original).]

[5] In the unreported decision affirming the issuance of the writ, the appeals court noted, "in 1984 Bona apparently was worth $26,000,000, yet in 1986 he listed absolutely no assets in statements to the Bankruptcy Court and to our State Court." *In the Matter Of The Application Of Jack Bona for Discharge From Imprisonment As An Insolvent Debtor,* No. A–5882–89T1, at 28 (App.Div. June 26, 1992).

> Essentially, it is a body execution enabling a judgment creditor in specified types of actions to cause the arrest of the judgment debtor and his retention in custody until he either pays the judgment or secures his discharge as an insolvent debtor.
>
> *Ibid.* (citing 4 *N.J. Practice* Forms ¶ 2053 at 268–69 (Marsh & Fischler, rev. ed. 1960)).

■ "[The writ] deprives the party taken of his liberty until he makes the satisfaction awarded." *Black's Law Dictionary* 262 (4th ed. 1968). Such a writ may be issued when the judgment debtor has assets which he unlawfully refuses to apply in payment of the judgment against him. *N.J.S.A.* 2A:17–78.

■ Bona was arrested and retained until he ultimately secured his discharge as an insolvent debtor. He was incarcerated because the court concluded he had assets and failed to disclose them. By virtue of his imprisonment on the issuance of the writ, he became a "debtor" for purposes of *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6.

■ I am also satisfied that Bona was a "prisoner" for purposes of the Tort Claims Act. The Constitution refers to one being *imprisoned* for a debt in cases of fraud. *N.J. Const. of 1947* art. I, ¶ 13 (emphasis added). Both a plain reading of the constitution and a reasonable interpretation of its language is that one who is imprisoned is a prisoner. *See id.* Case law is in accord. In *White v. Lewis,* 156 *N.J.Super.* 198, 200–01, 383 *A.*2d 744 (App. Div.1978), the court declared that for purposes of the Tort Claims Act a "prisoner logically refers at least to a person in a jail cell, irrespective of whether he had been just arrested, or had been convicted, for an offense." *Cf. Doe v. Youth & Family Services Div.,* 178 *N.J.Super.* 499, 505, 429 *A.*2d 596 (App.Div.1981) (Pressler, J., dissenting) (stating, "I am satisfied that one can be regarded as a prisoner for purposes of the exemption scheme only if one is confined to or is an inmate of [a prison, jail, or penal or correctional facility]"), *rev'd,* 89 *N.J.* 284, 445 *A.*2d 1148 (1982) (reversing for reasons stated in dissenting opinion). *See also Webster's II New Riverside Univ. Dictionary* 936 (1994) (identifying "prisoner" as "one kept in custody, captivity, or a condition of

forcible restraint, esp[ecially] while on trial or serving a prison sentence" or "one deprived of freedom of action or expression").

Under the constitution, the case law and the dictionary definition, by any sense of the word, Bona was a "prisoner" at the time he was incarcerated by reason of issuance of the writ. He was to be retained in custody until he either paid the judgment or secured his discharge as an insolvent debtor. If an individual jailed prior to trial without a finding of guilt is a prisoner, then Bona, having been jailed for committing a fraud, should be considered as a prisoner for purposes of the Tort Claims Act.

Having determined that Bona was both a "debtor" for purposes of *N.J.S.A.* 30:8–6 and a "prisoner" under *N.J.S.A.* 59:5–2(b)(4), the question remains whether Markward can be responsible for damages for the injuries Bona received as a result of the assault by another prisoner.

On its face *N.J.S.A.* 30:8–6 appears in conflict with *N.J.S.A.* 59:5–2(b)(4). The former statute provides for double damages if a debtor, such as Bona, is injured by virtue of not being separated from other inmates, while the latter statute provides for immunity to the jailer, such as Markward, for just such an injury. Markward contends that *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6 were impliedly repealed by the passage of *N.J.S.A.* 59:5–2(b)(4). Plaintiff disagrees.

The Tort Claims Act Repealer provision, *N.J.S.A.* 59:12–2, provides:

> All acts and parts of acts inconsistent with this act are, to the extent of such inconsistency, repealed, *including without limitation:*
>
> P.L.1971, c. 199, s. 26 (C. 40A:12–26).
> N.J.S. 18A:20–35;
> N.J.S. 38A:4–9;
> N.J.S. 38A:4–10;
> R.S. 53:1–22.
>
> [*N.J.S.A.* 59:12–2 (emphasis added).]

Although the Repealer provision does not expressly list *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6, that fact does not foreclose the possi-

bility that those statutory sections are repealed by implication. *Kemp v. New Jersey*, 147 *N.J.* 294, 305, 687 *A.2d* 715 (1997). The list [in the Repealer provision] has been deemed "inclusive, not exclusive." *Ibid.* ("It is significant that *N.J.S.A.* 59:12–2's list of expressly repealed statutes is inclusive rather than exclusive."). "Preexisting statutes that are not enumerated in the repealer provision of the [Tort Claims Act] may '[n]onetheless ... [have] been impliedly repealed because inconsistent with' other provisions of the [Act]." *Id.* at 306, 687 *A.2d* 715 (citing *Aebi v. Monmouth Cty. Highway Dept.*, 148 *N.J.Super.* 430, 434, 372 *A.2d* 1130 (App.Div.1977) (other citations omitted)). The critical inquiry is whether *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6 are "fatally inconsistent" with the Tort Claims Act, a question which is complicated due to the absence of case law interpreting the former statute. *Cf. id.* at 307, 687 *A.2d* 715 (recognizing that the inquiry as to whether *N.J.S.A.* 26:11–12 was fatally inconsistent with the Tort Claims Act was made more difficult due to absence of case law on the issue).

There is a strong presumption in New Jersey against the law of implied repealers. *Mahwah Twp. v. Bergen Cty. Bd. of Taxation*, 98 *N.J.* 268, 280–81, 486 *A.2d* 818, *cert. denied*, 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.2d* 696 (1985) (noting that a repeal by implication requires "clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt" and stating that "[e]very reasonable construction should be applied to avoid a finding of implied repealer") (citations omitted); *Swede v. Clifton*, 22 *N.J.* 303, 317, 125 *A.2d* 865 (1956) (finding presumption against repeal by mere implication and stating "where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision"); *see also Yacenda Food v. New Jersey Highway Auth.*, 203 *N.J.Super.* 264, 274, 496 *A.2d* 733 (App.Div.1985) (holding "The doctrine of implied repeal is disfavored in our law unless the later expression of the legislative will is so clearly in conflict with the earlier

statute that the two cannot reasonably stand together. The test is whether the laws are inconsistent or repugnant.") (citations omitted); *DMV v. Kleinert,* 198 *N.J.Super.* 363, 369, 486 *A.*2d 1324 (App.Div.1985) (stating same).

To the extent that the statutes can "reasonably stand together," they must be read in *pari materia. See Yacenda Food, supra,* 203 *N.J.Super.* at 274, 496 *A.*2d 733. However, even where an intention to repeal prior legislation is not expressed, it may be "inferred from radical changes in the existing law" upon the subject. *See Mahr v. State,* 12 *N.J.Super.* 253, 261–62, 79 *A.*2d 335 (Ch.Div.1951). *Accord City of Camden v. Byrne,* 82 *N.J.* 133, 153–54, 411 *A.*2d 462 (1980) (stating "presumption may be overcome when there is a clear showing that two legislative measures are patently repugnant or inconsistent" and concluding "whether or not the judiciary finds an implied repealer will depend in large part on any relevant expressions of legislative intent as well as the peculiar fact situations presented"); *New Jersey State P.B.A. v. Morristown,* 65 *N.J.* 160, 164–65, 320 *A.*2d 465 (1974) (declaring that law cannot be "evaluated in a vacuum" and stating that "new laws which radically change the old may be the basis of and may provide some indication of legislative intent; ... [a] new law altering fundamental assumptions relied upon by the old law will work to supersede earlier inconsistent statutes.").

The Tort Claims Act does not expressly repeal *N.J.S.A.* 30:8–5 or *N.J.S.A.* 30:8–6; however, viewing *N.J.S.A.* 30:8–5 and *N.J.S.A.* 30:8–6 together with *N.J.S.A.* 59:5–2(b)(4), it is apparent that the provisions may not reasonably stand together.

The New Jersey Tort Claims Act was created to "establish immunities for municipalities; it was not designed to create liability." *Russo Farms v. Vineland Bd. of Educ.,* 144 *N.J.* 84, 110, 675 *A.*2d 1077 (1996) (citing *Woodsum v. Pemberton Twp.,* 172 *N.J.Super.* 489, 517, 412 *A.*2d 1064 (Law Div.1980), *aff'd,* 177 *N.J.Super.* 639, 427 *A.*2d 615 (App.Div.1981)). The general establishment of immunity clearly extends to public employees. *See N.J.S.A.* 59:3–1(b). Under the Act, "[t]he liability of a public employee estab-

lished by this act is subject to any immunity of a public employee provided by law and is subject to any defenses that would be available to the public employee if he were a private person." *N.J.S.A.* 59:3–1(b). The only exception to this immunity provided under the Act occurs if the public employee acts either outside the scope of his employment or performs a crime, actual fraud, actual malice, or willful misconduct. *N.J.S.A.* 59:3–14.

It is recognized that the court, through its traditional common law function and its power to flexibly interpret the Act, may expand the liabilities of a public employee. *See Tice v. Cramer,* 133 *N.J.* 347, 369, 627 *A.*2d 1090 (1993) (citing *Chatman v. Hall,* 128 *N.J.* 394, 402, 608 *A.*2d 263 (1992)). However, "[u]nder no circumstances, ... may those liabilities, whatever their origin, trump the immunities provided for in the Act. Where inconsistent, the liabilities fall, the immunities stand." *Ibid.* (citing *Bombace v. Newark,* 125 *N.J.* 361, 372, 593 *A.*2d 335 (1991) (stating "the Act was clearly intended to reestablish a system in which immunity is the rule and liability is the exception") (other citations omitted)).

*N.J.S.A.* 30:8–6, in addition to providing that any sheriff, undersheriff, jailer or other officer who shall offend the provisions of *N.J.S.A.* 30:8–5 may be punished on conviction for a misdemeanor, provides that the officer shall "forfeit and pay double damages to the party aggrieved, to be recovered, with costs, by a civil action in any court having cognizance thereof." *See N.J.S.A.* 30:8–6. To the extent that *N.J.S.A.* 30:8–6 provides for a civil penalty against a jailer or other like officer who is acting in the course and scope of his employment, and in favor of a prisoner who is injured from an assault by another prisoner, it is fatally inconsistent with *N.J.S.A.* 59:5–2(b)(4). The latter statute, effective July 1, 1972, radically changed the law. The two statutes cannot reasonably stand together. Under *N.J.S.A.* 30:8–6, Markward is liable to Bona, as Bona was assaulted by a prisoner because he was not kept separate from the general prison population. *See N.J.S.A.* 30:8–6. Under *N.J.S.A.* 59:5–2(b)(4), Mark-

ward is immune for the same assault. *Cf. N.J.S.A.* 59:5–2(b)(4). The two laws cannot be read in *pari materia;* they are patently inconsistent. Following the directive of our Supreme Court in *Tice, supra,* as the former statute is inconsistent, it must fall.

This conclusion is supported by the language of *N.J.A.C.* 10A:31–22.22(a) which provides guidelines for the separation of inmates at county correctional facilities such as the Atlantic County jail. *See N.J.A.C.* 10A:31–22.2(a). The regulations read as follows:

(a) The following types of inmates shall be maintained separately insofar as space permits.

1. Male and female inmates;

2. Aggressive and passive/dependent inmates;

3. Inmates with special problems, such as alcoholics, sex offenders, drug addicts, etc., and inmates who do not have such problems;

4. Physically or mentally ill inmates and healthy inmates;

5. Serious offenders and less serious offenders; and

6. Sentenced inmates and detainees.

[*N.J.A.C.* 10A:31–22.2(a).]

Whether Bona was incarcerated as a less serious offender under section 5 or as detainee under section 6, it is clear that Markward needed only to separate the inmates "insofar as space permit[ted]." *See id.* The regulation recognizes that those responsible for separating inmates need flexibility in the face of growing prison overcrowding.

According to the evidence presented to one of the Law Division judges at the time Bona sought discharge from imprisonment, Bona was housed in D–Left, cell 14, a single cell providing the most secure area in the housing unit. *See In the Matter of the Application of Jack Bona for Discharge from Imprisonment as an Insolvent Debtor, supra.* Inmates housed in that area were usually those accused of minor offenses or crimes with no violent history. In 1987, the federal court permitted double bunking on the first level, D–Left, which increased the capacity from the original 16 inmates to 24 inmates. A plain reading of the regula-

tion allowing the inmates to be separated "only insofar as space permits" gives discretion to the person in charge of inmate housing and recognizes that total separation of the inmates may be virtually impossible. To find a correctional official who did not separate debtors from other prisoners liable for an injury by one inmate to another, in violation of a statute that originated 120 years earlier when prison overcrowding was not the problem that it is today, would ignore the realities of prison overcrowding as well as the regulatory grant of discretion to separate inmates "insofar as space permits." Correctional officials may be unable, despite their best efforts, to properly care for the safety of prisoners while in custody. A fair reading of both *N.J.S.A.* 59:5–2(b)(4) and *N.J.A.C.* 10A:31–22(a) [6] reinforces such a conclusion. *See N.J.S.A.* 59:5–2(b)(4); *N.J.A.C.* 10A:31–22(a); *see also Harris v. New Jersey,* 61 *N.J.* 585, 589, 297 *A.2d* 561 (1972) (noting "sweeping provision" in Tort Claims Act granting immunity to public entity and public employee for injury by one prisoner to another).

For all of these reasons Markward's motion for summary judgment is granted. There are no material facts in dispute. No evidence has been presented by Bona that Markward acted maliciously or fraudulently in placing him in the cell in which he was housed when he was assaulted. The proofs are so one sided that Markward must prevail as a matter of law. *Brill v. The Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 540, 666 *A.2d* 146 (1995). Markward is entitled to the Tort Claim's immunities pursuant to *N.J.S.A.* 59:5–2(b)(4) by reason of the attack on Bona by another prisoner. To the extent *N.J.S.A.* 59:5–2(b)(4) conflicts with *N.J.S.A.* 30:8–6, the latter is impliedly repealed. An action for damages by an inmate based on an assault by another inmate is no longer a cognizable civil action as a result of the passage of the Tort Claims Act.

---

[6] "[A] rule of an administrative agency is subject to the same canons of construction as a statute." *Matter of N.J.A.C. 14A:20–1.1,* 216 *N.J.Super.* 297, 306, 523 *A.2d* 686 (App.Div.1987)

Bona filed a cross motion to require the court to compel the parties to mediation under *R.* 1:40–4(a). In light of the court's findings that defendant Markward is immune from suit, the cross motion is moot.

The complaint is dismissed with prejudice and without costs.