THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SYLVIA STEINBERG, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, May 28, 1947.

*Frank Hogan, District Attorney* (*Paul Reilly* of counsel), for plaintiff.

*Hyman Barshay* for defendant.

GIACCONE, M. The defendant herein was charged with a violation of the Sanitary Code for possessing a hypodermic syringe, a violation of paragraph (a) of subdivision 2 of section 1263 of the Education Law [now in § 6513] for practicing medicine, the defendant not being lawfully licensed or authorized to practice medicine, and with a violation of the Penal Law for committing an assault in the third degree. The offenses arose from the conduct of the defendant during the recent situation in New York City when the Commissioner of Health, alarmed at the number of smallpox cases, in the exercise of his function as a public official for the protection of the public health, appealed to the citizens to be vaccinated for immunity against the disease. The Mayor of the City of New York, as well as many public and private agencies, joined in the appeal and

thousands of citizens for their own protection obeyed the summons and proceeded to be vaccinated in public institutions or by their own private doctors. The defendant, allegedly a practical nurse, injected five hundred persons with syringe containing water, while she professed to inject the subjects with vaccine serum. The complainant was one of nine in a line waiting to be vaccinated in a bar and grill where the defendant made her quarters. She took her place at the end of the bar. She informed the people on line that she was giving injections for smallpox and vaccinated several with a syringe and needle. A police officer happening to pass by and observing the proceeding, approached the defendant and took the needle from her hand. He gathered up several other needles, some from a pot on the stove in the rear of the restaurant where they were being apparently sterilized in water. The defendant told the police officer that she had worked as a practical nurse and that she was vaccinating the persons on line. She later admitted to the officer that she was using merely water for inoculating purposes and not any serum whatever. She made the further statement that she had had no purpose other than wanting to impress her boy friend with her efficiency as a nurse; they had had some disagreement and she felt, to use her words, " that she would make a hit with him." She further made the startling statement that during two days April 15th and April 16th she had vaccinated five hundred people by inoculation. Under the circumstances, only the appearances of vaccination could be meant.

The defense contends that there is no violation of paragraph (a) of subdivision 2 of section 1263 of the Education Law, in that the acts committed by the defendant did not amount to the practice of medicine. Subdivision 7 of section 1250 of the Education Law [now in § 6501] reads: " The practice of medicine is defined as follows: A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition." It is argued that the vaccination was not a diagnosis, an operation, a treatment or a prescription, and further that all of the aforesaid terms presuppose the existence of human disease or disorder. Treatment is a very general term. Vaccination is a treatment given to a human being, even though no disease is

present, to prevent disease on the assumption that human beings are susceptible to disease particularly of the contagious kind such as smallpox. It is treatment as well as preventive medicine. In our modern age, the great progress of science is evidenced among other things by preventive medicine which is adopted even before disease makes its appearance and precisely to bar it from the human organism. That, too, must be construed to be the practice of medicine. The purpose of the statutes in the Education Law concerning the practice of medicine was to protect not merely the profession but also the general public. (*People* v. *Mulford,* 148 App. Div. 716; *People ex rel. Bennett* v. *Laman,* 277 N. Y. 368; *Brown* v. *Shyne,* 242 N. Y. 176.) The defendant herein held herself out as qualified to give those whom she injected such treatment as would prevent smallpox. She was not a duly qualified or licensed physician. Incidentally, it nowhere appears that she was acting under a physician or carrying out his orders. Obviously, it is the function of the courts thus to interpret the law as to carry out the intentions of the Legislature which in the present statutes intended to protect and preserve the health of the people of the community from the menace of the ignorant, the unprepared, the quacks and the fakers. As was said in *People* v. *Mastromarino* (148 Misc. 454, 455): " To read into the statute a requirement that actual therapeutic or surgical treatment be given before the crime is completed would frustrate the very results sought to be achieved; that is, the erection of a safeguard of public health."

In *People* v. *Mulford* (140 App. Div. 716, *supra*) the court held that mere laying on of hands and manipulation, breathing and rubbing of hands together which were represented as " Suggestive Therapeutics " and which could do no harm if they did no good, was practice of medicine. It stated (p. 719): " A patient may often suffer as well from a failure to prevent proper remedies, or afford surgical relief promptly, as from making improper prescriptions, or performing unskillful operations. A physician who holds himself out to treat patients for physical ills, should know whether to do anything and what to do to relieve his patient, otherwise he should not be permitted to practice, and impose upon the unfortunate sufferers who like the poor are always with us, and many of whom need the protection of the State, against quacks in and out of the profession of medicine."

It may be argued here that the defendant did not practice medicine for the very reason that she was perpetrating a hoax.

The gravamen is in having held herself out as qualified and as intending to offer proper treatment. She lulled persons into a sense of security when they needed treatment, and sought it from her, relying on her false pretenses. That is the theory upon which the quacks and other unlicensed persons have been convcited. That in this instance the fraud was greater cannot destroy the principle of pretending to protect the public from falling into the hands of the unauthorized who cannot or will not offer proper treatment.

It was not essential for the defendant to claim to be a physician to bring her acts within the statute. She held herself out as qualified when she offered to perform the acts recited in the complaint. (*People* v. *Lucas*, 198 N. Y. S. 846; *People* v. *Zinke*, 169 Misc. 573.)

It is further contended that the defendant cannot be guilty of assault in the third degree as the defendant did not intend any bodily harm since the injection of water was harmless and since her acts were committed with the consent of the persons allegedly assaulted. At the time the defendant vaccinated several people, she knew that there was fear of an epidemic and that the Health Commissioner of the city had been so concerned with its potentialities that he had himself, as well as the mayor of the city and many other agencies, urged the people to submit to vaccination. The state of mind in the community was such that thousands had complied immediately. Five hundred, evidently very simple people, had applied to the defendant herself when she set up her quarters in a bar and grill with syringe and other apparatus to perform what might have been a tragic hoax on innocent people and only to impress her boy friend. She knew they were not being immunized, and she alone knew that it was only water and not vaccine serum that had been injected. The fact that it was water was itself the danger for if the contagion of the several cases had spread, her victims would have faced the consequences thoroughly unprotected as they had been deceived by the unlawful and fraudulent laying on of the hands of the defendant upon them. She was a menace not to the extent of a state of mind only as the defense seems to believe but actually by the commission of an overt act. The puncturing of the body of another person with a needle under the circumstances was certainly an assault.

It is true that as a rule the consent of the prosecutor if intelligently given, is a good defense in assault. We have examples in amicable contests, in assaults arising from volun-

tary sexual relations and in tumultuous frolics. There are however limitations to the rule to quote Wharton's Criminal Law (Vol. 1, 12th ed., § 835): '' On the other hand, if the fight has anything of character of illegality, or if the assault be of a nature injurious to the public as well as to the party assaulted, this reasoning does not apply. But in any view, consent obtained through fraud, by stupefaction or through the ignorance or incapacity of the party assaulted, is no defense.'' The consent must be voluntary and intelligent. It must be free from force or fraud. Consent is the affirmative act of an unconstrained and undeceived will. The general principle seems to be also that the act performed should not exceed the extent of the terms of consent. In *Bartell* v. *State* (106 Wis. 342) the defendant claiming to be a magnetic healer caused an eighteen-year-old girl whom he was treating to expose her person. After a massage of fifteen minutes which was evidently a legitimate part of his treatment, he caused the girl to sit on his lap and took indecent liberties with her. The court held there was no assault and battery if he had treated her in good faith (p. 345), '' * * * but if, on the other hand, he needlessly caused such person to expose her person to his view for his evil purposes, and she submitted because of her ignorance, and under those circumstances and for such purpose he secured the opportunity of laying his hands upon her body, he was guilty of the offense of assault and battery.'' In *People* v. *Gibson* (232 N. Y. 458) where the defendant was convicted of assault in the third degree for indulging in indecent familiarities with a young girl with her consent, while the court tended to hold that the youth of the girl impaired her legal capacity to consent, and therefore there could be no consent, nevertheless it avoided ruling directly on the question, but it did base its opinion, holding that there was an assault, upon the broader principle that even if the girl could consent as to her own person, she could not consent to allow the defendant to corrupt the public morals.

Certainly in this instance the people who submitted to vaccination could not consent to the perpetration of such acts as were committed by the defendant in this case. It not only subjected the person injected to violence, but it also was a menace to the community. There was no consent willfully given. The people submitted to the defendant under the pretext of her authority and under the profession of her mission. They thought that a duly authorized person was immunizing them against a dreaded disease. In fact, their bodies were being punc-

tured by an unauthorized quack with a warped mentality who, for a silly notion, was perpetrating a hoax upon innocent persons which might have had fatal consequences. It was certainly an assault under the circumstances.

The violation of the Sanitary Code for possessing a hypodermic syringe is dismissed, as the People have failed to prove the required elements.

The motions therefore for the dismissal of the charges involving a violation of paragraph (a) of subdivision 2 of section 1263 of the Education Law, and assault in the third degree are hereby denied and the defendant is held for trial in the Court of Special Sessions. Bail continued.