STATE OF NEW JERSEY, BY GROVER C. RICHMAN, JR.,
ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY,
PLAINTIFF-RESPONDENT, v. HOWARD W. ROBERTS,
ADMINISTRATOR OF THE ESTATE OF EMILY M. RAD-
FORD, DECEASED, DEFENDANT-RESPONDENT, AND
THE TOWNSHIP OF MIDDLETOWN, A MUNICIPAL COR-
PORATION OF THE STATE OF NEW JERSEY, INTER-
VENOR-CLAIMANT, APPELLANT.

Argued April 30, 1956—Decided May 21, 1956.

*Mr. Henry J. Saling* argued the cause for appellant (*Messrs. Roberts, Pillsbury & Carton,* attorneys; *Mr. Lawrence A. Carton, Jr.,* of counsel).

*Mr. Charles J. Kehoe* argued the cause for plaintiff-respondent (*Mr. Grover C. Richman, Jr.,* attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   In this escheat action we certified on our own motion the appeal of the Township of Middletown to the Appellate Division from a judgment of the Superior Court, Chancery Division, adverse to the township's claim that it is entitled to the money which the State seeks to escheat.

The money is on deposit in a savings account in the administrator's name, and is the surplus of the personal property of the estate of Emily M. Radford, a township resident, who died intestate on September 16, 1944 leaving no husband and no known kindred or relatives surviving her.   At her death, and on January 2, 1946 when the

administrator was appointed, *R. S.* 3:5–9, 10 and 11 of the chapter of the *Revised Statutes* governing distribution of personal property (These sections have since been expressly repealed, *L.* 1951, *c.* 304, *sec.* 25, *p.* 1104) provided that the administrator of the estate of an intestate leaving no spouse and no known kindred or relatives should after one year from the intestate's death put the surplus of the personal estate out at interest, paying the income thereon annually to the municipality where the intestate had a legal residence, and paying the principal to such municipality seven years after the date of death unless before such payment was made a court of competent jurisdiction should direct the payment thereof to some person shown to be "legally entitled" thereto. The statute expressly provided that the payments to the municipality were to be "for the use of its poor."

The Escheat Act, *N. J. S.* 2A:37–1 *et seq.,* under which the instant action was brought, was enacted as *chapter* 155 of the *Laws of* 1946 and became effective April 25, 1946, some nineteen months after the date of decedent's death and three months after the appointment of the administrator. *Section* 2A:37–12 of that act provides:

"If any person, who, at the time of his death, has been or shall have been, the owner of any personal property within this state, and shall have died, or shall die, intestate, without heirs or known kindred, capable of inheriting the same, and without leaving a surviving spouse, such personal property, of whatsoever nature the same may be, shall escheat to the state."

Judge Schettino, who decided the case in the Chancery Division, held that *R. S.* 3:5–9, 10 and 11, although historically originating as part of the Distribution Law, see *L.* 1898, *p.* 778, were in actuality but the means by which the State at that time exercised its sovereign right to escheat such personal property, *State by Parsons v. Standard Oil Co.,* 5 *N. J.* 281, 297 (1950), affirmed 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951), and that in enacting the general Escheat Act the State displaced its creature municipalities in favor of itself as taker, thereby accomplishing the repealer

of the sections by implication. Judge Schettino followed in this respect the decision of Judge Francis, who, also sitting in the Chancery Division, held, in *Mahr v. State*, 12 *N. J. Super.* 253, 262 (1951), that "it is plain that the Legislature, in enacting the Escheat Act, intended to efface the sections of the Distribution Act relied upon by the defendant township."

We fully agree that such was the legislative design. A comparison of the two statutes plainly reveals that the later Escheat Act fully asserts the State's sovereign right to escheat property of this kind to itself and covers the whole subject of escheatable property dealt with by the mentioned sections of the Distribution Act. The reasonable, indeed inescapable, conclusion therefore is that the Escheat Act was intended by the Legislature to supplant the earlier law. This is thus a case for application of the settled rule of statutory construction that in that circumstance the later statute, though not expressly saying so, will be held to operate to repeal the earlier law. *State Board of Health v. Borough of Vineland*, 72 *N. J. Eq.* 862 (*E. & A.* 1907).

Middletown urges that, because the provisions for payment of such property to the municipalities were part of the Distribution Law, this evinced a legislative design to establish municipalities as a class of "distributees" of the intestate's personal property, in which circumstance a property interest in the money vested in Middletown on the death of Mrs. Radford, *Skellenger's Ex'rs. v. Skellenger's Ex'rs.*, 32 *N. J. Eq.* 659, 662 (*Ch.* 1880), so that the funds in question for that reason are not embraced within the class of personal property subject to taking by the State under the terms of the subsequently enacted Escheat Law. There are two answers to this contention. The first is that, even if Middletown had in fact acquired a vested interest in the money at Mrs. Radford's death, nothing barred the right of the State to deprive its creature municipality of it, at least before its payment to the municipality for the expressed public purpose, relief of the poor. See *Jersey City v. Martin*, 126 *N. J. L.* 353, 361 (*E. & A.* 1941). But, and

this provides the second answer to the contention, Middletown did not acquire a vested interest in the money at Mrs. Radford's death. Municipalities were not classified as distributees under the Distribution Law in the sense, for example, that *R. S.* 3:5–2 provides a vested interest for the spouse and lineal descendants "to whom such distribution is to be made." The statute distinguished between the municipality and persons "legally entitled to such surplus," the latter being the "distributees" entitled to "distribution" under other sections of the law. The municipality was merely the designee to whom the administrator was directed "to pay" the surplus if no such "person legally entitled" thereto successfully claimed the same within seven years after the intestate's death. See *Mayor and City Council of Baltimore City v. While,* 189 *Md.* 571, 56 *A. 2d* 824 (*Ct. App.* 1948). In other words, Middletown's status was simply that of the subdivision of the State named to receive the property pursuant to the State's exercise, in that mode, of its sovereign right to escheat such property. Upon the enactment of the general Escheat Law the municipal authority was rescinded and the State substituted itself as taker in its own right. The State, therefore, became entitled in this action to the judgment entered in its favor; all of the surplus with the accumulated interest thereon was still on deposit in the administrator's name at the time the State brought the action.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For reversal*—None.