687 A.2d 715

DELISHA KEMP, A MINOR, BY HER PARENT AND NATURAL GUARDIAN, DEBRA WRIGHT, AND DEBRA WRIGHT, IN HER OWN RIGHT, PLAINTIFFS–APPELLANTS, v. STATE OF NEW JERSEY, COUNTY OF BURLINGTON, RIVERSIDE BOARD OF EDUCATION, RIVERSIDE HIGH SCHOOL, DEFENDANTS–RESPONDENTS, AND JOHN DOES MANUFACTURERS (1–10) RICHARD ROES DISTRIBUTORS (1–10); AND ROBERT DOES (1–10) (FICTITIOUS NAMES) INDIVIDUALLY, JOINTLY, SEVERALLY, AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued October 21, 1996—Decided January 14, 1997.

*David K. Cuneo*, Haddonfield, argued the cause, for plaintiffs–appellants.

*Valerie L. Egar*, Deputy Attorney General, for respondent State of New Jersey (*Peter G. Verniero*, Attorney General of New Jersey, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel).

*Timothy E. Annin*, for respondent County of Burlington (*Capehart & Scatchard*, attorneys; *Alison M. Nissen*, on the brief).

*Frank G. Basile*, for respondents Riverside Board of Education and Riverside High School (*Basile & Testa*, attorneys; *Diane M. Vari*, on the brief).

## OPINION

The opinion of the Court was delivered by

COLEMAN, Justice.

The primary issue in this appeal is whether either of two statutory provisions, *N.J.S.A.* 59:6–4 of the Tort Claims Act ("TCA") or *N.J.S.A.* 26:11–12 (now repealed), immunizes defendants from liability for injuries caused by the administration of a rubella vaccine to a pregnant high school student. The Appellate Division, in a published opinion, found the defendants were immune under both statutes. 286 *N.J.Super.* 549, 670 *A.*2d 31 (1996). We granted certification, 144 *N.J.* 586, 677 *A.*2d 759 (1996), and now reverse.

## I

During the spring of 1975, there was an outbreak of measles and rubella that reached near epidemic proportions in Burlington County and in other areas of the State. Burlington County health officials, with the cooperation of the Riverside Board of Education and the assistance of the New Jersey Department of Health, organized and operated a free immunization clinic at Riverside

High School to vaccinate students. Plaintiff Debra Wright, a senior at the high school, was given a rubella vaccine at the clinic on April 18, 1975.

The product information in 1973 and 1974 for the live attenuated rubella vaccine specifically recommended that pregnant women should not be given the vaccine and that women of child-bearing age should not be considered for vaccination unless there was no possibility of pregnancy at the time of the injection or in the following two to three months.

A pre-vaccination screening examination of participants in the vaccination clinic consisted of interviews in which questions regarding sexual activity were asked of the students. Defendants' standard practice was to counsel all females of childbearing age about the risks of vaccination and to refrain from inoculating any female who was pregnant or sexually active. Plaintiff Wright was pregnant when she received the rubella vaccine. On December 28, 1975, Wright gave birth to Delisha Kemp, who was born with congenital rubella syndrome. As a result, Kemp is afflicted with severe birth defects and requires continuing medical treatment.

The complaint, filed in October 1992, alleges that defendants were negligent in failing to ascertain whether Wright was pregnant or sexually active prior to her vaccination. Plaintiffs also allege that Wright was not warned that she should not receive the vaccine if she were pregnant or became pregnant within three months because an unborn child could suffer severe birth defects from the vaccine.

Defendants moved for summary judgement on several grounds, including immunity under *N.J.S.A.* 59:6–4 and *N.J.S.A.* 26:11–12. The trial court denied summary judgment on the immunity issues, finding that neither *N.J.S.A.* 59:6–4 nor *N.J.S.A.* 26:11–12 immunized defendants from liability. The Appellate Division reversed. It concluded that although the plain meaning of the word "treatment" in *N.J.S.A.* 59:6–4 might have included the examination and inoculation received in this case, the Legislature did not intend a plain meaning interpretation of the treatment exception in the

TCA. It found that the Legislature intended to exclude from the broad category of treatment all but the kind of ordinary medical examinations and treatments rendered by a doctor. It concluded that in this case the immunization for measles was not the ordinary care that a doctor would normally render and thus found the immunity was triggered. It also found that the public defendants have immunity under *N.J.S.A.* 26:11–12 because the statute was not repealed until after the date of the alleged negligence. The court rejected both the implied and the retroactive repealer doctrines as a basis to deny immunity. 286 *N.J.Super.* at 563, 670 *A.*2d 31.

## II

■ Plaintiffs contend that defendants are not immune from liability under *N.J.S.A.* 59:6–4, because they engaged in the affirmative act of injecting the rubella vaccine into Wright without first examining her or properly questioning her regarding whether she was pregnant. Plaintiffs contend that the administration of a vaccine is a preventive measure that constitutes a form of treatment. Thus, plaintiffs argue that *N.J.S.A.* 59:6–4 immunity is inapplicable to the facts of this case because the pre-vaccination screening examination that defendants allegedly failed to perform properly was for the purpose of administering treatment in the form of the rubella vaccine.

Plaintiffs' argument requires an analysis of *N.J.S.A.* 59:6–4. It provides:

Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others. For the purposes of this section, "public employee" includes a private physician while actually performing professional services for a public entity as a volunteer without compensation.

[*N.J.S.A.* 59:6–4.]

As a proposition of law, immunity for public entities is the general rule and liability is the exception. *See N.J.S.A.* 59:2–1(a);

*Canico v. Hurtado,* 144 *N.J.* 361, 364, 676 *A.*2d 1083 (1996); *Fielder v. Stonack,* 141 *N.J.* 101, 117, 661 *A.*2d 231 (1995); *Tice v. Cramer,* 133 *N.J.* 347, 355, 627 *A.*2d 1090 (1993); *Bombace v. City of Newark,* 125 *N.J.* 361, 372–73, 593 *A.*2d 335 (1991). *N.J.S.A.* 59:6–4 of the TCA is consistent with that policy.

*N.J.S.A.* 59:6–4 can be divided into two sections. The first section provides absolute immunity for the failure to perform an adequate examination "for the purpose of determining whether [a] person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others." *N.J.S.A.* 59:6–4. The second section establishes an exception to the general rule of absolute immunity if the examination is "for the purpose of treatment." *Ibid.*

Plaintiffs maintain that defendants' conduct fell within the exception to the grant of immunity in *N.J.S.A.* 59:6–4. Thus, the narrow, but complex, question becomes whether the vaccination constitutes treatment within the meaning of the exception.

■ The plain meaning of "treatment" encompasses the administration of a vaccine. *See* 2 Roscoe N. Gray & Louise J. Gordy, *Attorneys' Textbook of Medicine* ¶ 33.12, at 33–4 (3d ed.1990) ("[t]he most effective treatment of an infectious disease is obviously its prevention" by immunization or vaccination); *Black's Law Dictionary* 1502 (6th ed.1990) (defining "treatment" as "broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies"); *Stedman's Medical Dictionary—Fifth Abridged Lawyers' Edition* 1477 (5th ed.1982) (stating that "treatment" encompasses, among other things, preventive or prophylactic efforts, including "the institution of measures designed to protect a person from an attack of a disease to which he has been, or is liable to be, exposed"). A vaccine is "[a] medicinal material which, when introduced properly into the body, is capable of causing the body to produce certain substances (antibodies) that overcome invading viruses, bacteria, or their poisons. In other words, a vaccine builds up immunity." 3 J.E. Schmidt, *Attorneys' Dictio-*

*nary of Medicine & Word Finder* V–1 (1983). Thus, the *act* of administering a vaccine involves the introduction of foreign matter into the recipient's body with the *purpose* of causing a specific reaction in the recipient's body. It is that reaction that creates the immunity to the unwanted disease.

The rubella vaccine administered in this case is analogous to the anti-rabies vaccination administered in *Calabrese v. Trenton State College,* 162 *N.J.Super.* 145, 392 *A.*2d 600 (App.Div.1978), *aff'd,* 82 *N.J.* 321, 413 *A.*2d 315 (1980). In *Calabrese,* the plaintiff suffered adverse side effects from the administration of a rabies vaccine. *Id.* at 150, 392 *A.*2d 600. The plaintiff sued for malpractice, alleging negligence in the administration of the vaccine and for the failure to warn him of its dangerous side effects. *Id.* at 150–51, 392 *A.*2d 600. On appeal, the Appellate Division determined that the "administration of a given drug," in that case the rabies vaccine, constituted medical treatment. *Id.* at 156, 392 *A.*2d 600; *see also Boyd v. Louisiana Medical Mut. Ins. Co.,* 593 *So.*2d 427, 428–29 (La.Ct.App.1991) (equating administration of oral polio vaccine with "medical treatment" in context of determining whether physician adequately disclosed risks of treatment as required by informed consent statute), *writ denied,* 594 *So.*2d 877 (La.1992); *In re Christine M.,* 157 *Misc.*2d 4, 595 *N.Y.S.*2d 606, 613 (N.Y.Fam.Ct.1992) (equating parents' failure to inoculate child against measles with deprivation of "recommended treatment" in violation of statute requiring parents to provide "adequate medical care"); *People, on Complaint of Burke v. Steinberg,* 190 *Misc.* 413, 73 *N.Y.S.*2d 475, 477 (N.Y.Mag.Ct.1947) (concluding that vaccination against smallpox is "treatment" under statute defining practice of medicine: "Vaccination is a treatment given to a human being, even though no disease is present, to prevent disease. . . . It is treatment as well as preventive medicine.").

The Appellate Division in this case, however, concluded that the Legislature must have intended to reserve the "treatment" exception for "the type of medical examinations that we normally associate with treatment and care provided by doctors and hospi-

tals—the ordinary provision of care." 286 *N.J.Super.* at 557, 670 *A.*2d 31. The Appellate Division found that because Wright was vaccinated as part of a public immunization clinic, Wright did not receive "that type of ordinary medical care." *Ibid.* We find that the Appellate Division's analysis is flawed.

First, the legislative commentary and history relied on by the Appellate Division state that *N.J.S.A.* 59:6–4's grant of immunity "does not apply to examinations for the purpose of treatment *such as are ordinarily made in doctors' offices and public hospitals.*" *See* Comment to *N.J.S.A.* 59:6–4 (emphasis added); *Senate Labor, Industry and Professions Committee Statement,* No. 524, *L.* 1983, *c.* 184. The Appellate Division interpreted that language to mean that the immunity does not apply to "ordinary medical care." 286 *N.J.Super.* at 557, 670 *A.*2d 31. The Appellate Division also concluded that "ordinary medical care" does not encompass the administration of a vaccine through a public vaccination clinic, apparently because a public vaccination is something extraordinary. *Ibid.*

We find that an examination for the purpose of administering a vaccine is precisely the type of examination "such as [is] ordinarily made in doctors' offices." Comment to *N.J.S.A.* 59:6–4. The administration of a vaccine is a routine and common medical procedure. *See Roscoe & Gordy, supra,* ¶ 33.12(2). The fact that the vaccine is given in a public clinic, rather than in the privacy of a doctor's office, does not change the essential character of the ordinary act of administering a vaccine.

Second, the court's rejection of a "plain meaning" interpretation was based on its view that such an interpretation would lead to a result inconsistent with the statutory scheme. 286 *N.J.Super.* at 557, 670 *A.*2d 31. The Appellate Division concluded that the pre-vaccination screening examination was comparable to other public health examinations described in the Comment to *N.J.S.A.* 59:6–4. *Id.* at 555, 670 *A.*2d 31. The Comment to *N.J.S.A.* 59:6–4 describes the immunity as applying to

the failure to perform adequate public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants.

[Comment to *N.J.S.A.* 59:6–4.]

The Appellate Division reasoned that the pre-vaccination screening was designed to screen out those individuals who should not receive the vaccine, in much the same way as an eye examination might rule out a prospective driver or a physical examination might screen out a prospective boxer. 286 *N.J.Super.* at 555, 670 *A.*2d 31.

Although the examples listed in the Comment to *N.J.S.A.* 59:6–4 were not intended to be exclusive, their general descriptions must be construed to embrace only other illustrations that are similar in nature to those enumerated. If the purpose of the screening examination was to inform Wright whether she had measles, such an examination would have been similar to testing for tuberculosis or visual fitness to operate a motor vehicle, and would fit perfectly into the group of public health examinations articulated in the Comment.

But the public health examinations described in the Comment are simply not analogous to the examination that took place in the present case. The examinations described in the Comment are not conducted for purposes of rendering medical treatment. Once the examination of a prospective driver or athlete is complete, the public entity takes no further action of a medical nature. The same is true in the case of public tuberculosis examinations that are conducted for diagnostic purposes only. In this case, however, the purpose of the screening examination was not to see if Wright and others had measles, but to determine which individuals fell into the high risk category and should not receive the vaccine. The screening examination here served the same purpose as a doctor asking a patient whether he or she is allergic to penicillin before administering an injection of penicillin. The purpose of both interviews is to determine whether to implement the intended treatment. The introduction of the vaccine into Wright's body, or the penicillin into the hypothetical patient's body, to cause the

body to react in a certain way, falls within the definition of medical treatment.

That conclusion is consistent with California precedents interpreting California's comparable statute. *Cal. Gov't Code* § 855.6 (West 1996). That statute is virtually identical to *N.J.S.A.* 59:6–4. *See, e.g., Colome v. State Athletic Comm'n. of Cal.*, 47 *Cal.App.*4th 1444, 55 *Cal.Rptr.*2d 300, 308 (1996) (explaining that public employee is immune under section 855.6 where employee conducts examination for purpose of determining plaintiff's fitness to participate in athletic competition, and neither renders treatment to plaintiff nor suggests any medical procedure to plaintiff), *review denied*, (1996); *Smith v. County of Kern*, 20 *Cal.App.*4th 1826, 25 *Cal.Rptr.*2d 716, 723 (1993) (explaining that public employee is not immune under section 855.6 where employee's actions "were taken to facilitate the delivery of medical diagnosis or care"), *review denied*, (1994). Because our TCA was patterned after the California Tort Claims Act of 1963, reference to California precedents interpreting section 855.6 is appropriate. *See Kleinke v. Ocean City*, 147 *N.J.Super.* 575, 579, 371 *A.*2d 785 (App.Div.1977). We hold that the pre-vaccination examination was an examination for the purpose of treatment, and therefore falls within the exception to the TCA grant of immunity. Consequently, defendants are not entitled to summary judgment on the basis of the absolute immunity provided by *N.J.S.A.* 59:6–4.

### III

Next, we must decide whether *N.J.S.A.* 26:11–12 should be applied to this case. That statute granted "good-faith immunity" to county boards of health and their agents. To answer that inquiry, we must decide whether our 1972 TCA impliedly repealed *N.J.S.A.* 26:11–12. If it did not, we must decide the effect the 1976 express repeal of *N.J.S.A.* 26:11–12 has on this case.

### -A-

Prior to its repeal in April 1976, *N.J.S.A.* 26:11–12 provided:

> No member, officer or agent of a county board shall be sued or held liable for any act done or omitted in good faith and with ordinary discretion on behalf of or under the county board or pursuant to its rule or ordinances.
>
> [*N.J.S.A.* 26:11–12.]

Plaintiffs argue that *N.J.S.A.* 26:11–12 was repealed in 1972 when the TCA was enacted. To answer that contention, we must ascertain the Legislature's intention regarding the TCA's effect on preexisting statutes. Some indication of this is found in the TCA's repealer provision, *N.J.S.A.* 59:12–2, which provides for the express repeal of a select group of enumerated statutes, and also purports to authorize the implied repeal of all unenumerated statutes that are "inconsistent" with the TCA. It provides:

> All acts and parts of acts inconsistent with this act are, to the extent of such inconsistency, repealed, including *without limitation:*
>
> P.L.1971, c. 199, s.26 (C. 40A:12–26).
>
> N.J.S. 18A:20–35;
>
> N.J.S. 38A:4–9;
>
> N.J.S. 38A:4–10;
>
> R.S. 53:1–22.
>
> [*N.J.S.A.* 59:12–2 (emphasis added).] [1]

It is significant that *N.J.S.A.* 59:12–2's list of expressly repealed statutes is inclusive rather than exclusive. Thus, the fact that the TCA did not expressly enumerate *N.J.S.A.* 26:11–12 in its repealer provision does not foreclose the possibility that the TCA repealed *N.J.S.A.* 26:11–12 by implication. *See Tice, supra,* 133 *N.J.* at 369, 627 *A.*2d 1090 (holding that pre-TCA liability arising out of preexisting statutes not enumerated in *N.J.S.A.* 59:12–2 was repealed to extent inconsistent with immunity provisions of TCA).

---

[1] The subject matter of the repealed statutes expressly enumerated in *N.J.S.A.* 59:12–2 is varied. *N.J.S.A.* 40A:12–26 provided immunity for all counties and municipalities for injury to persons from the use of public property. *N.J.S.A.* 18A:20–35 provided comparable immunity for school districts. *N.J.S.A.* 38A:4–9 concerned the immunity of members of the organized militia. *N.J.S.A.* 38A:4–10 concerned security for costs in actions against members of the organized militia. *N.J.S.A.* 53:1–22 related to the discretionary authority of the Attorney General to defend State police officials in criminal proceedings in the interest of the State.

Preexisting statutes that are not enumerated in the repealer provision of the TCA may "[n]onetheless ... [have] been impliedly repealed because inconsistent with" other provisions of the TCA. *Aebi v. Monmouth County Highway Dep't,* 148 *N.J.Super.* 430, 434, 372 *A.*2d 1130 (App.Div.1977); *Polyard v. Terry,* 148 *N.J.Super.* 202, 208, 372 *A.*2d 378 (Law Div.1977) (stating that TCA supersedes provisions of Joint Tortfeasors Contribution Law only to extent of inconsistency between the two acts), *rev'd on other grounds,* 160 *N.J.Super.* 497, 390 *A.*2d 653 (App.Div.1978), *aff'd,* 79 *N.J.* 547, 401 *A.*2d 532 (1979); *see also New Jersey State Policemen's Benevolent Ass'n v. Town of Morristown,* 65 *N.J.* 160, 165, 320 *A.*2d 465 (1974) ("A new law altering fundamental assumptions relied upon by the old law will work to supersede earlier inconsistent statutes."); *State v. Roberts,* 21 *N.J.* 552, 555, 123 *A.*2d 1 (1956) (explaining that where later act "covers the whole subject" dealt with by prior act, the "reasonable, indeed inescapable, conclusion" is that later act was intended by Legislature to supplant former: "in that circumstance the later statute, though not expressly saying so, will be held to operate to repeal the earlier law"); *Division of Motor Vehicles v. Kleinert,* 198 *N.J.Super.* 363, 369, 486 *A.*2d 1324 (App.Div.1985) ("Implied repealers are not favored. Only when a later expression of legislative will is clearly in conflict with an earlier statute on the same subject will courts find a legislative intent to supersede earlier law." (citation omitted)); *Mahr v. State,* 12 *N.J.Super.* 253, 261, 79 *A.*2d 335 (Ch.Div.1951) ("[W]here the intention to effectuate a repeal is clear and compelling; where there is a clear repugnancy between the two acts, or a manifest intention to cover the same subject matter by way of revision; or where, considering the specific provision in relation to the general object of a statute, the purpose to repeal prior legislation is revealed, it is the judicial function to effectuate it." (citation omitted)); *see generally* 1A Norman J. Singer, *Sutherland Statutory Construction* §§ 23.08 to 23.11, at 334–63 (5th ed.1993). A good rule of statutory construction, which we apply, is:

When a subsequent enactment covering a field of operation coexistent with a prior statute cannot by any reasonable construction be given effect while the prior law remains in existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict.

Conversely, if the inconsistency between a later act and an earlier one is not fatal to the operation of either, the two may stand together and no repeal will be effected.

[*Singer, supra,* § 23.09, at 338–39 (footnotes omitted).]

-B-

The critical inquiry now shifts to whether *N.J.S.A.* 26:11–12 is fatally inconsistent with the TCA. Although the question is simply stated, the resolution is made more difficult because of the absence of case law interpreting *N.J.S.A.* 26:11–12.

Defendants argue that *N.J.S.A.* 26:11–12 is not fatally inconsistent with the TCA. They maintain that if the administration of the vaccination fell outside of the TCA grant of immunity in *N.J.S.A.* 59:6–4, *N.J.S.A.* 26:11–12 would still immunize defendants if they acted in "good faith" and with "ordinary discretion."

An analysis of *N.J.S.A.* 26:11–12 in light of the TCA as a whole, however, suggests a different conclusion. *N.J.S.A.* 26:11–12 establishes a generalized grant of qualified immunity to county boards "for *any act* done or omitted *in good faith* and *with ordinary discretion.*" *N.J.S.A.* 26:11–12 (emphasis added).

The TCA includes both general provisions concerning immunity and liability, *see N.J.S.A.* 59:2–3; *N.J.S.A.* 59:3–2, and specific provisions that govern in particular factual contexts. *See, e.g., N.J.S.A.* 59:5–1 to 5–6 ("Correction and Police Activities"); *N.J.S.A.* 59:6–1 to 6–7 ("Medical, Hospital and Public Health Activities"). The TCA also expressly distinguishes between discretionary acts and ministerial acts. *See N.J.S.A.* 59:2–3; *N.J.S.A.* 59:3–2.

*N.J.S.A.* 26:11–12 is clearly inconsistent with the TCA's general discretionary immunity provisions. Under the TCA's general grant of discretionary immunity, all public entities and

public employees are absolutely immune from liability for injury resulting from "the exercise of judgment or discretion." *N.J.S.A.* 59:2–3(a); *N.J.S.A.* 59:3–2(a). *N.J.S.A.* 26:11–12, however, establishes a generalized grant of qualified immunity to county boards and their agents "for *any act* " performed "in *good faith* and *with ordinary discretion.*" *N.J.S.A.* 26:11–12 (emphasis added). We conclude that *N.J.S.A.* 26:11–12's grant of only qualified immunity for discretionary acts is clearly inconsistent with the TCA's general discretionary immunity provisions which provide for absolute immunity in that context.

*N.J.S.A.* 26:11–12 is also plainly inconsistent with the TCA's general provisions regarding liability for ministerial acts. The TCA provides that, in general, public entities and employees are not exonerated from liability for injuries resulting from negligence in the performance of ministerial functions. *See N.J.S.A.* 59:2–3; *N.J.S.A.* 59:3–2. By definition, ministerial acts do not involve the exercise of discretion. *See, e.g., Black's Law Dictionary* 996 (6th ed.1990) (defining "ministerial act" as act which "person or board performs under a given state of facts in a prescribed manner . . . without regard to or the exercise of . . . judgment upon the propriety of the act being done"). The official comment to *N.J.S.A.* 59:2–3 explains that, in respect of ministerial duties, "once a public entity does act, then 'when it acts in a manner short of ordinary prudence, liability could be adjudged as in the case of a private party.' " Comment to *N.J.S.A.* 59:2–3 (quoting *Fitzgerald v. Palmer,* 47 *N.J.* 106, 109, 219 A.2d 512 (1966)); *see also* Comment to *N.J.S.A.* 59:3–2 (stating that the "reasoning contained in the comment to *N.J.S.A.* 59:2–3 is equally applicable to this section"). Thus, under the TCA, the standard of liability in respect of ministerial duties is the ordinary negligence standard.

By its plain language, *N.J.S.A.* 26:11–12 applies to "any act" of a county board or its agents, and that includes ministerial acts as well as acts of discretion. *Ibid.* Thus, under *N.J.S.A.* 26:11–12, a public entity that performs a ministerial act in good faith, even negligently, would be immune from liability. Under the TCA's

general rule, however, an entity that acts negligently in the performance of a ministerial duty is not immune from liability, regardless of good faith. We conclude that *N.J.S.A.* 26:11–12 is inconsistent with the TCA treatment of ministerial acts.

-C-

■ Next, we must resolve whether *N.J.S.A.* 26:11–12 is *fatally* inconsistent with the TCA. That question is answered by looking to the legislative purpose and design of the TCA. Generally, as we have noted, *supra* at 299, 687 *A.*2d at 717, the purpose of the TCA " 'was to establish immunities for municipalities; it was not designed to create liability.' " *Russo Farms, Inc. v. Vineland Bd. of Educ.,* 144 *N.J.* 84, 110, 675 *A.*2d 1077 (1996) (quoting *Woodsum v. Township of Pemberton,* 172 *N.J.Super.* 489, 517, 412 *A.*2d 1064 (Law Div.1980), *aff'd,* 177 *N.J.Super.* 639, 427 *A.*2d 615 (App.Div. 1981)). Thus, if an immunity existed prior to the TCA, that immunity remained available to the public entity after the TCA's enactment unless totally inconsistent therewith. *Ibid.*

■ Applying that principle to *N.J.S.A.* 26:11–12 reveals that it is fatally inconsistent with the TCA. In the context of discretionary activity, *N.J.S.A.* 26:11–12 grants only qualified immunity, while the TCA provides a general grant of absolute immunity. *N.J.S.A.* 26:11–12 "good-faith immunity," therefore, simply cannot coexist with the TCA without undermining the express legislative intent in the TCA to provide a general grant of absolute immunity for the discretionary acts of public entities.

Furthermore, if the preexisting immunities were to remain available to public entities, that would mean that *N.J.S.A.* 26:11–12's grant of "good-faith immunity" would prevail over the TCA's general provision for liability in respect of negligently performed ministerial acts. Such an anomalous result would defeat the express legislative intent to establish in the TCA a general rule of no immunity for negligently performed ministerial acts.

Moreover, the statutory scheme of the Act reveals that where the Legislature saw fit to grant "good-faith immunity," it did so expressly in a specified context. *See N.J.S.A.* 59:3–3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law."). Similarly, where the Legislature saw fit to confer absolute immunity for ministerial acts, it also did so in specified contexts. *See N.J.S.A.* 59:6–4 (providing absolute immunity in the context of examination for public health purposes). Thus, a reasonable interpretation of the statutory scheme is that the Legislature did not intend that immunity or liability in general would depend on good faith. We find therefore, that *N.J.S.A.* 26:11–12's general grant of "good-faith immunity" for "any act" of a county board or its agents is irreconcilably inconsistent with the TCA. It is deemed to have been impliedly repealed in 1972 when the TCA was enacted.

-D-

Further, the express repeal of *N.J.S.A.* 26:11–12 in 1976 is not inconsistent with our holding that *N.J.S.A.* 26:11–12 was impliedly repealed by the TCA in 1972. *N.J.S.A.* 26:11–12 was repealed effective April 1976 as part of the larger repeal of Chapter 11 of Title 26. *See N.J.S.A.* 26:11–1 to –31, 26:11–33 to –61, *repealed by L.* 1975, *c.* 329, § 21. Chapter 11 covered a broad range of subject matter relating to county boards of health. To the extent that the subject matter of the repealed sections was reenacted, it was enacted in *N.J.S.A.* 26:3A2–1 to –35, the Local Health Services Act and the County Environmental Health Act (Chapter 3A2).

Significantly, the precise subject matter of *N.J.S.A.* 26:11–12 was not reenacted in Chapter 3A2. The express repeal may indicate that the Legislature deemed *N.J.S.A.* 26:11–12 inconsistent with the TCA and that it had been impliedly repealed by the TCA's enactment. Conversely, the express repeal could indicate that *N.J.S.A.* 26:11–12 was still in existence in 1976. *See Singer, supra,* § 23.11, at 362 ("the later express repeal of a particular statute may be construed as some indication that the legislature

did not previously intend to repeal the statute by implication"); *Central Constr. Co. v. Horn,* 179 *N.J.Super.* 95, 102, 430 *A.*2d 939 (App.Div.1981) (same).

■ We are convinced that the *Horn* rule of construction "should be accorded no more weight than is customarily given contemporary interpretation originating from other sources." *Singer, supra,* § 23.11, at 362. Here, other factors were at play that may explain the subsequent express repeal of *N.J.S.A.* 26:11–12. The repeal of *N.J.S.A.* 26:11–12 was not an isolated act. That section was repealed along with a larger group of statutes in anticipation of the enactment of a new chapter concerning local health departments. Thus, regardless of whether *N.J.S.A.* 26:11–12 was earlier repealed by implication, that section would no doubt have been expressly repealed in 1976 when the entirety of Chapter 11 was repealed. Therefore, the express repeal of *N.J.S.A.* 26:11–12 in 1976 should be accorded little weight in the analysis of whether *N.J.S.A.* 26:11–12 was previously impliedly repealed by the TCA.

Additionally, the express repeal of *N.J.S.A.* 26:11–12 was unaccompanied by a savings clause or other language limiting the effect of its repeal.

> In this State it is the general rule that where a statute is repealed and there is no saving[s] clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as though it had never existed, except as to matters and transactions passed and closed.
>
> [*Parsippany Hills Assocs. v. Rent Leveling Bd.,* 194 *N.J.Super.* 34, 42, 476 *A.*2d 271 (App.Div.), *certif. denied,* 97 *N.J.* 643, 483 *A.*2d 169 (1984).]

Because plaintiff Kemp was less than six months old when the statute was repealed in 1976, the present case cannot be regarded as a transaction "passed and closed." *Ibid.* Furthermore, it is most likely that the Legislature intended that *N.J.S.A.* 26:11–12 should be considered "as though it had never existed" in view of the passage of the comprehensive TCA. *Parsippany Hills Assocs., supra,* 194 *N.J.Super.* at 42, 476 *A.*2d 271. The subsequent express repeal of *N.J.S.A.* 26:11–12 unaccompanied by a reenactment of its subject matter and unaccompanied by a savings clause

or other language limiting the effect of its express repeal, permits the inference that the Legislature recognized that *N.J.S.A.* 26:11–12 was inconsistent with, and therefore impliedly repealed by, the TCA.

We hold that *N.J.S.A.* 26:11–12's generalized grant of "good-faith immunity" is fatally inconsistent with the TCA. Therefore, the trial court was correct in denying summary judgment on the ground of "good-faith immunity" under *N.J.S.A.* 26:11–12, and on the ground of immunity under the TCA, *N.J.S.A.* 59:6–4.

## IV

The judgment of the Appellate Division dismissing the complaint is reversed.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN and COLEMAN–7.

*Opposed*—None.